### John P. GIFFORD and Total Computer Services, Inc. v. SUN DATA, INC.

[686 A.2d 472]

No. 95-037

August 6, 1996. After a jury verdict in favor of plaintiff John P. Gifford, defendant Sun Data, Inc. moved for judgment notwithstanding verdict on claims of tortious interference with a contract and intentional interference with prospective contracts. On appeal, Sun Data claims that the court erred in denying its motions, arguing that Gifford failed to meet his evidentiary burden. Gifford cross-appeals, claiming that the trial court erred in failing to give a requested jury instruction on a broker's right to recover a commission, and in failing to instruct the jury on punitive damages. We affirm in part and reverse in part.

Gifford, through his business, Total Computer Services, Inc., purchased computer equipment for resale from Sun Data, Inc. Gifford identified prospective buyers and received quotes from Sun Data for the cost of the equipment a buyer wished to purchase. Gifford would complete the sale, marking up the Sun Data price to achieve his profit. The parties also occasionally negotiated leases of Sun Data equipment with Gifford receiving a commission when the lease was finalized.

To protect his client base, Gifford secured a promise from Dan Hendrix, then vice president of Sun Data, that Sun Data would not solicit, or sell directly to, customers Gifford originally acquired. If Sun Data did sell directly to such a customer, Gifford was to be paid a commission.

By early 1989 the parties' relationship had deteriorated. Gifford claimed he was owed $72,000 in commissions while Sun Data maintained Gifford owed it $54,000 for unpaid invoices. At about the same time, Gifford entered into a $20,000 computer sale contract with David McPhaul, president of Harrison Publishing Company. Before McPhaul paid the contract price, however, a Sun Data employee called and told him to pay the amount plaintiff owed Sun Data on the contract, between $7,000 and $8,000, directly to Sun Data. McPhaul refused, but used the figure Sun Data quoted to reduce the price of his contract with Gifford from $20,000 to $10,000. Thereafter, Sun Data terminated its relationship with Gifford and ceased paying commissions he alleged were owed to him. Sun Data also began selling directly to customers that Gifford had solicited. Gifford received no commissions on these sales.

After trial the jury awarded Gifford $10,000 for tortious interference with a contract, $68,000 for intentional interference with prospective contractual rela-

tions, and $16,200 for three breach-of-contract claims. The jury also found that Sun Data owed Gifford approximately $62,174 in commissions, but offset that amount by $62,729, which it found Gifford owed Sun Data for overdue invoices.

## I.

Sun Data first claims that the trial court erred in denying its motions under V.R.C.P. 50 for directed verdict and judgment notwithstanding the verdict on the claim of tortious interference with a contract. To establish liability for this tort, Gifford must show that Sun Data intentionally and improperly induced Harrison Publishing not to perform its contract. *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 80, 484 A.2d 911, 913 (1984); see Restatement (Second) of Torts § 766 (1979).

We first look to the element of intent, which can be proven by showing that an actor knew that interference was substantially certain to occur. *Williams*, 145 Vt. at 81, 484 A.2d at 914. In this case Sun Data, attempting to bypass Gifford and receive direct payment from his customer, revealed his anticipated gross profit on an unconsummated transaction. It naturally follows that a customer armed with such knowledge might try to renegotiate a deal in his own favor. Sun Data cannot plausibly maintain that it did not know that revealing price information was likely to disrupt Gifford's contract. The jury could reasonably conclude that Sun Data acted with intent.

Next we look to inducement, which for this tort need not rise to the level of coercion, threats or compulsion. *Id.* at 82, 484 A.2d at 914. Rather, the jury may find inducement if defendant's acts caused the nonperformance of the contract. *Id.* As we noted above, the original terms of the contract were not performed in this case. Under our standard of review, this is sufficient evidence of inducement.

Finally, Sun Data claims that its actions were not improper. Our analysis of this issue is guided by § 767 of the Restatement (Second) of Torts (1979),[1] which directs us to consider the motives and actions of Sun Data, the relations of the parties, and their respective interests. Boiled down, Sun Data's argument is that Gifford's accounts were in arrears, and therefore Sun Data was entitled to seek payment directly from Gifford's customer. Sun Data had no contractual relationship with this customer, and thus no right to seek direct payment. Sun Data argues that it was protecting its own interests, and thus that its actions were economically justified. It failed to explain, however, how depriving Gifford of a substantial profit would improve its ability to collect on his overdue accounts. An actor has no legal right to invade the contractual relations of others solely to promote his own financial interests. *Williams*, 145 Vt. at 83, 484 A.2d at 915. Gifford adequately established that Sun Data's actions were improper, and the motions for directed verdict and judgment notwith-

---

[1] In determining whether an actor's conduct in intentionally interfering with a contract of a prospective contractual relation of another is improper or not, consideration is given to the following factors:

   (a) the nature of the actor's conduct,

   (b) the actor's motive,

   (c) the interests of the other with which the actor's conduct interferes,

   (d) the interests sought to be advanced by the actor,

   (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

   (f) the proximity or remoteness of the actor's conduct to the interference and

   (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979).

standing verdict were properly denied. See *Foote v. Simmons Precision Products Co.*, 158 Vt. 566, 570, 613 A.2d 1277, 1279 (1992) (in reviewing denial of motions for directed verdict and judgment notwithstanding verdict, we view evidence in light most favorable to nonmoving party and affirm if any evidence fairly supported plaintiff's theory).

## II.

Next, Sun Data claims that the court erred in failing to direct a verdict, or grant its motion for judgment notwithstanding the verdict, on Gifford's claim of tortious interference with prospective contractual relations.[2] This tort protects the same interest in stable economic relationships as does the tort of interference with contract, but applies to business relationships not formally reduced to contract. *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990). The principal distinction between the two is that a "broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." *Id.*

To prevail on a claim of tortious interference with prospective contractual relations, a plaintiff must prove that the defendant interfered with business relations existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or improper. *PPX*

*Enters. v. Audiofidelity Enters.* 818 F.2d 266, 269 (2d. Cir. 1987). Competitive business practices are not tortious. See Restatement (Second) of Torts § 768 (1979)[3] (competition as proper or improper influence). If the defendant's interference is intended to advance its own competing interests, the claim will fail unless the defendant's methods are criminal or fraudulent. *Id.*

Here, Gifford relies on the fact that, after their relationship terminated, Sun Data made direct sales to customers he had solicited. There is no evidence that Gifford had ongoing business relations with these customers other than his testimony that he had tried, and failed, to make additional sales to them. The relationship Gifford describes is too speculative to constitute an "existing business relation."

Gifford conceded that Sun Data was entitled to break off its relationship with him, and that he was not able to obtain

---

[2] The elements of the tort are as follows: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained. *Triple R Indus., Inc. v. Century Lubricating Oils, Inc.*, 912 F.2d 234, 236 (8th Cir. 1990).

---

[3] (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and
(d) his purpose is at least in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will. Restatement (Second) of Torts § 768 (1979).

the type of equipment he had purchased from Sun Data through other suppliers. Far from having a realistic "business expectancy," Gifford apparently was unable to serve his former customers.

The case he relies on, *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276 (6th Cir. 1991), is inapposite. In *Monette*, the plaintiff, a bread wholesaler, had a reliable daily sales route of consistent customers. The defendant, the plaintiff's wholesale supplier, obtained the plaintiff's customer list through deceit. Thereafter the defendant refused to sell the plaintiff inventory and took over the plaintiff's route. *Id.* at 279. Here, Gifford did not make predictable sales to reliable customers, and there is no evidence that Sun Data used deceit to undermine his business.

Furthermore, Gifford's claim that Sun Data's actions were improper is based on its apparent breach of an agreement not to make direct sales to his customers unless it paid him a commission. This agreement, however, was never reduced to writing and was referred to by Sun Data as an informal arrangement. A breach of this "arrangement" cannot be said to be criminal or fraudulent. Thus, because Sun Data was acting at least in part to advance its interests as a competitor, its actions were not "improper" within the meaning of § 768 of the Restatement (Second) of Torts. See Restatement (Second) of Torts § 768 cmt. e. (1979).

Sun Data's motions for directed verdict and judgment notwithstanding the verdict on the tortious interference claim should have been granted.

### III.

One of the largest transactions the parties negotiated was a lease/sale agreement with Killington, Ltd. The lease agreement contained an option that enabled Killington to trade in its computer system for a new one that was not yet available. The price of the option, $17,950

per month for sixty months, could be increased by adding more months to the term if the price of the new system exceeded $500,000. Gifford was to be paid a $20,000 commission if Killington exercised the option. When Killington attempted to do so, however, Sun Data refused to deliver the new system for the option price, and proposed a new term of eighty-four months because the value of the equipment Killington was to trade in had dropped. Killington rejected the higher price and cancelled the lease agreement on the basis that Sun Data had breached it. Gifford tried to collect his commission, but Sun Data refused to pay it on the grounds that the deal had not been consummated.

On cross-appeal, Gifford claims that the trial court erred in failing to instruct the jury that he was entitled to a commission on the Killington transaction if Sun Data's conduct caused the deal to fall through.[4] See *Arjay Properties, Inc. v. Hicks*, 143 Vt. 335, 338, 465 A.2d 777, 779 (1983) (where contract not completed due to seller's wrongful conduct, broker who produces ready, willing and able buyer is nonetheless entitled to commission). The evidence showed that Sun Data altered the terms of the contract after Killington

---

[4] Gifford also claims that the court erred in failing to give a requested instruction on punitive damages. After the jury was instructed on the law, however, Gifford's only objection was that "the instructions should include an instruction to the jury that a party may not avoid obligation to pay commission to a broker where the party breaches or defaults on the underlying agreement on which the commission is based." Gifford did not object to the lack of a punitive damages instruction; thus, his claim on that issue was not preserved, and we will not consider it. See *Lorrain v. Ryan*, 160 Vt. 202, 207, 628 A.2d 543, 547 (1993) (failure to make objection after charge is waiver that precludes raising issue on appeal).

elected to exercise its option. Moreover, the commission on the deal was substantial. Absent the instruction, the jury may have concluded that Gifford was not entitled to a commission, because the deal was not concluded. We cannot say that the omission was harmless. Gifford is entitled to a new trial on that issue. See *Lorrain v. Ryan*, 160 Vt. 202, 209, 628 A.2d 543, 548 (1993) (to prevail on appeal from jury instruction, plaintiff must show error in instruction resulted in prejudice).

*The award of damages for tortious interference with prospective contractual relations is reversed; reversed and remanded for reconsideration of Gifford's right to receive a commission on the Killington transaction; otherwise, affirmed.*

Motion for reargument denied September 4, 1996.