**HOWARD OPERA HOUSE ASSOCIATES and O'Neill Crawford & Green, P.C., Plaintiff,**

v.

**URBAN OUTFITTERS, INC., Defendant.**

No. 2:99–CV–140.

United States District Court, D. Vermont.

June 2, 2000.

Thomas D. Anderson, Sheehey, Furlong, Rendall & Behm, Burlington, VT, Peter B. Joslin, Barbara Ruth Blackman, Theriault & Joslin, Montpelier, VT, Geoffrey W. Crawford, O'Neill, Crawford & Green, Burlington, VT, for Howard Opera House Associates, O'Neill, Crawford & Green, P.C., plaintiffs.

Marc Burns Heath, Downs, Rachlin & Martin, P.C., Burlington, VT, for Urban Outfitters, Inc., defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiffs Howard Opera House Associates ("HOHA") and O'Neill Crawford & Green, P.C. ("OC & G") sued Defendant Urban Outfitters, Inc. ("Urban Outfitters") in Chittenden Superior Court claiming nuisance and breach of contract, and sought a temporary restraining order and preliminary injunction. Urban Outfitters filed for removal to this Court on the basis of diversity jurisdiction. Urban Outfitters filed several counterclaims (paper 15) and amended counterclaims (paper 28), which Plaintiffs moved to dismiss. OC & G's Motion to Dismiss two counterclaims (paper 37), namely abuse of process and tortious interference with contract, was granted by this Court in a Memorandum and Order filed February 17, 2000.

Defendant Urban Outfitters has moved the Court to reconsider its February 17, 2000 Order on several grounds. Alternatively, Urban Outfitters requests leave to amend pursuant to Fed.R.Civ.P. 15(a). For the reasons stated below, Urban Outfitters Motion to Reconsider (paper 51) is granted, and the Motion to Amend Pleadings (paper 51) is denied as moot. Upon further review, Plaintiff's Motion to Dismiss (paper 37) is denied.

### I. Discussion

The underlying facts in this case are set forth fully in this Court's February 17, 2000 Memorandum and Order. Accordingly, familiarity with the facts is assumed.

Urban Outfitters seeks reconsideration of the Order on three separate grounds. First, Urban Outfitters contests the finding that Urban Outfitters had not properly preserved its claim regarding the constitutionality of the Burlington Noise Ordinance. Second, Urban Outfitters moves the Court to reconsider that the appropriate standard in Vermont for abuse of process was set forth in *Jacobsen v. Garzo*, 149 Vt. 205, 542 A.2d 265 (1988), and pursuant to that standard, the abuse of process claim is valid. Third, Urban Outfitters argues that the Court did not address their assertion that, in the context of tortious interference with contract, the holding of *Jacobsen* does not apply to cases where a third party is induced to bring

suit. Plaintiff OC & G opposes both motions; the Motion to Reconsider on the basis of untimeliness, and the Motion to Amend Pleadings for failure to comply with Local Rule 15.1. The Court will first address OC & G's opposition to the motions, and then each of Urban Outfitter's contentions in turn.

### A. OC & G Oppositions to Urban Outfitter's Motions

■ Local Rule 7.2(b) requires that a "motion to reconsider an order of the court, other than a motion governed by Fed.R.Civ.P. 59 or 60, must be filed within 10 days from the date of the order." LR 7.2(b). The Memorandum and Order was issued February 17, 2000 and Urban Outfitters did not file its motion until March 13, 2000. Thus, Urban Outfitters failed meet the requirements of Local Rule 7.2(b).

However, Urban Outfitters has also moved to amend their pleadings. Interestingly, they do not stand alone in their dilatory approach to filing; OC & G's Opposition to the Motion to Amend (for failure to attach a redlined version of the proposed amendment in violation of Local Rule 15.1) transgressed the filing deadline as well. If the Court were to deny the Motion to Reconsider on the basis of untimeliness, consistency would require granting the Motion to Amend as unopposed.

Urban Outfitters seeks to amend simply to clarify its preexisting claims. Therefore, no substantive difference exists between proceeding on the Motion to Reconsider and allowing Urban Outfitters leave to amend. If the Court denies the Motion to Reconsider on the basis of untimeliness, the Court will grant the Motion to Amend Pleadings, and will eventually be ruling on the exact same issues raised in the present Motion to Reconsider. In the interests of expediting the inevitable consideration of Urban Outfitters claims, the Motion to Reconsider is granted and the Motion to Amend denied as moot.

### B. Preservation of the Noise Ordinance Claim

The February 17, 2000 Order found that Urban Outfitters had not properly pled their allegations regarding the unconstitutionality of the Burlington Noise Ordinance. Upon further review, however, it is clear that Urban Outfitters expressly raised the issue of the unconstitutionality of the Noise Ordinance in its Fifth Affirmative Defense. *See* Answer at 3. Thus, the claim is preserved and was properly argued before the Court.

### C. Reconsideration of the Abuse of Process Claim

■ In determining the viability of the abuse of process claim in the Order, the Court applied *Doctor's Associates, Inc. v. Weible*, 92 F.3d 108 (2d Cir.1996) to the facts in this case. In their briefs, both parties argued the abuse of process claim under the test provided by *Doctor's Associates*. That case held that when the relevant conduct occurred prior to the filing of a lawsuit, abuse of process claims are barred. If the "relevant conduct" is considered to be Jerome O'Neill's phone call to the police, and the process alleged to be abused is the lawsuit subsequently filed, then the relevant conduct in this case occurred prior to the filing of the lawsuit. According to that reasoning, the February 17, 2000 Order held that there were no grounds for an abuse of process claim under *Doctor's Associates*. Following the issuance of the Order, Urban Outfitters brought to the Court's attention in its Motion to Reconsider that *Doctor's Associates* is not the applicable standard in this case. Rather, *Jacobsen v. Garzo*, 149 Vt. 205, 542 A.2d 265 (1988), is the leading case in Vermont on abuse of process and is controlling on this issue.

*Jacobsen* held that "a plaintiff alleging the tort of abuse of process must plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an

ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." *Id.* at 208, 542 A.2d 265. Urban Outfitters has pled that OC & G misused Mr. O'Neill's status as member of the Police Commission to improperly use a court process (the noise citation) for the ulterior purpose of meeting "an evidentiary burden in a civil action seeking unspecified money damages." Urban Outfitters has also alleged that the noise citation, in conjunction with the lawsuit, is being used to curtail their First Amendment rights. Under *Jacobsen,* unlike *Doctor's Associates,* the timing of the events is irrelevant.

Urban Outfitter's argues that even under the higher *Doctor's Associates* standard, the claim of abuse of process should have survived the motion to dismiss stage. Urban Outfitters construes their argument as follows: The noise citation issued on April 28, 2000 was the process abused by OC & G, not the lawsuit filed by OC & G on May 5th. Rather, OC & G's incorporation of the noise citation into their complaint was the "improper use of a court process [ (the noise citation) ] for an ulterior motive or an ulterior purpose." 149 Vt. at 208, 542 A.2d 265. Thus, Urban Outfitters argues that the order of events does not preclude the success of the counterclaims under *Doctor's Associates.* As the matter is resolved in favor of Urban Outfitters under *Jacobsen,* the Court need not address how the case would have come out under Connecticut law.

Urban Outfitters has alleged facts that can reasonably support an inference that OC & G acted with wrongful intent. While Urban Outfitters has not pled the factors of motive and intent with specificity, such specific pleading is not necessary to survive the motion to dismiss stage. "Malice, intent, knowledge, and other conditions of the mind [ . . . ] may be averred generally." Fed.R.Civ.P. 9(b). *See also Gagliardi v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir.1994); *Posr v. Court Officer,* 180 F.3d 409, 418 (2d Cir.1999) (holding that a claim of retaliation for the exercise of First Amendment rights need only allege facts which could reasonably support an inference of retaliatory intent in order to survive a motion to dismiss). Thus, Urban Outfitter's abuse of process claim must survive the Motion to Dismiss.

### D. Reconsideration of the Tortious Interference with Contract Claim

In dismissing Urban Outfitters counterclaim for tortious interference with contract, the February 17, 2000 Order relied on the Vermont Supreme Court's holding in *Jacobsen,* 149 Vt. at 209, 542 A.2d 265. That case determined that the filing of a lawsuit itself cannot constitute tortious interference with contract as a matter of law. Plaintiffs argued that *Jacobsen* controlled the present case, and Urban Outfitters rebutted in its Opposition to OC & G's Motion to Dismiss that the holding of *Jacobsen* did not apply where the allegation relates to inducement of a third party to renege on a contract. In the present motion, Urban Outfitters claims that the Court did not address this contention.

On the contrary, the Court specifically addressed the distinction made by Urban Outfitters between filing a lawsuit as a means of interfering with contract, and inducing a third party to file a lawsuit as a means of interfering with contract: "The Vermont Supreme Court has held that the filing of a lawsuit itself cannot constitute tortious interference with contract as a matter of law. *Jacobsen v. Garzo,* 149 Vt. 205, 209, 542 A.2d 265 (Vt.1988). Thus, if the filing of a lawsuit cannot constitute tortious interference with contract, then OC & G's noise complaint which allegedly led to HOHA's filing of a lawsuit also cannot constitute such tortious interference." *Howard Opera House v. Urban Outfitters,* No.99–CV–140 (D. Vt. filed February 17, 2000).

However, more recent Vermont law lays out a clear test for tortious interference with contract in the third party context. *Gifford v. Sun Data, Inc.,* 686 A.2d 472, 165 Vt. 611 (Vt.1996) holds that to estab-

lish liability for tortious interference with contract, the plaintiff must show that the defendant intentionally and improperly induced a third party not to perform its contract with the plaintiff. Under *Gifford,* the intent element of tortious interference with contract can be proved by showing that the actor knew that interference was substantially certain to occur, and the inducement element of tortious interference with contract need not rise to the level of coercion, threats, or compulsion. Rather, inducement may be found if the defendant's acts caused nonperformance of the contract.

■ The *Gifford* elements of tortious interference with prospective contractual relations are "(1) existence of valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an intentional act or interference on the part of the interferer, (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained." *Id.* at 613, 686 A.2d 472 (citations omitted). Several other Vermont cases reiterate all or some of these factors. This Court has applied these same standards. *See Deringer v. Strough,* 918 F.Supp. 129 (D.Vt.1996), reversed on other grounds, 103 F.3d 243 (2d Cir.1996); *Burlington Drug Co. v. VHA, Inc.,* 898 F.Supp. 257 (D.Vt.1995) (to be liable for interference with contractual relationship, defendant must have intentionally and improperly induced or caused another to perform under its contract with plaintiff).

■ It is clear that Urban Outfitters has alleged facts sufficient for surviving a motion to dismiss under *Gifford.* HOHA is Urban Outfitters' landlord, and OC & G was well aware of that relationship. Urban Outfitters alleged that OC & G induced HOHA to file suit against Urban Outfitters for alleged breach of the lease, which has done damage to their business interests. Particularly, agreements made pursuant to the lawsuit to play music at unacceptably low levels has allegedly caused loss of goodwill in the target market and losses in sales. Finally, Urban Outfitters contends that without OC & G's alleged interference, such damage to their relationship with their landlord, and subsequently to their business, would not have occurred.

While the holding in *Jacobsen* is not explicitly limited to the dual party context, the facts of that case involve only two parties, and the court does state that "the filing of a lawsuit may not be the predicate for a claim of tortious interference *under the circumstances of this case," Id.* at 206, 542 A.2d 265 (emphasis added). The primary thrust of *Jacobsen* is concerned with allowing free access to the courts. By preventing the use of lawsuits as predicates for tortious interference claims, plaintiffs are restricted from claiming tortious interference every time a party with whom they have a contract files a lawsuit against them. This preventative measure is unnecessary in the third party context; if the law allows the filing of a lawsuit by HOHA to serve as the grounds for a counterclaim by Urban Outfitters against OC & G, it will not have a direct chilling effect on HOHA's free access to the courts. Moreover, the state has no interest in protecting persons who allegedly seek to induce another to file a lawsuit against a third person.

Lacking indication from the Vermont Supreme Court that inducement to file a lawsuit against a third party cannot serve as the predicate to tortious interference with contract, the Court is unwilling to expand the holding of *Jacobsen* to the third party context. Thus, in the third party context, the intentional act or interference which gives rise to the tortious interference may be the act of inducing a party to file a lawsuit against the intended victim. Since this is a third party case, Urban Outfitters has sufficiently alleged facts which protect the tortious interference with contract counterclaim from dismissal. Accordingly, Plaintiff's Motion to Dismiss is denied.

## II. Order

In light of the preceding analysis and the precedent cited therein, the Court's Memorandum and Order of February 17, 2000 was erroneous. Upon further review, Defendant's Motion to Reconsider (paper 51) is GRANTED, and Plaintiff's Motion to Dismiss (paper 37) is DENIED. Defendant's Motion to Amend Pleadings (paper 51) is denied as moot. SO ORDERED.