Ran-Mar, Inc. v. Town of Berlin, No. 199-4-01 Wncv (Toor, J., Nov. 30, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| RAN-MAR, INC. and RHD DEVELOPMENT CO., INC., <br>  Plaintiffs <br><br> v. <br><br> TOWN OF BERLIN, MCKEE, GIULIANI & CLEVELAND and GLORIA RICE, ESQUIRE, <br>  Defendants | SUPERIOR COURT <br> Docket No. 199-4-01 Wncv |

RULING ON MOTION FOR SUMMARY JUDGMENT

This case arises out of the imposition of attorney's fees in connection with the collection of past-due property taxes. Plaintiffs Ran-Mar and RHD are taxpayers who claim that they were charged attorney's fees without a legal basis therefor. They assert claims for declaratory judgment, unjust enrichment, denial of equal protection, and tortious interference with contractual relations.

Defendants McKee, Giuliani & Cleveland (MGC) and Gloria Rice (Rice) moved for summary judgment on the issue of tortious interference with contractual relations (Count 4 of the Third Amended Complaint). Plaintiffs opposed that motion and filed a cross-motion for summary judgment seeking a declaratory judgment that the fees are illegal. Although not so stated, the motion seeks summary judgment on Counts 1 and 3 of the complaint (the statutory

and constitutional claims). Their cross-motion was asserted against all defendants, including the Town of Berlin. In response, MGC and Rice filed a cross-motion on the claim for declaratory judgment. The defendant Town filed no response to the Plaintiffs' summary judgment motion. Oral argument took place on October 17.[1]

Relevant Undisputed Facts

Defendants filed a statement of material facts with their initial motion for summary judgment. Plaintiffs never filed a paragraph-by-paragraph response to that statement as required by V.R.C.P. 56. Thus, all facts alleged therein are taken as true for purposes of the motion. V.R.C.P. 56(c)(2). With their cross-motion, Plaintiffs filed their own statement of material facts, to which Defendants did properly respond. In response to the cross-motion, Defendants filed an additional statement of material facts, to which Plaintiffs responded. Thus, the court will rule based upon (a) the facts initially alleged by Defendants and not responded to by Plaintiffs, (b) the facts alleged by Plaintiffs and admitted in Defendants' response, and (3) the facts alleged in Defendant's second statement of material facts and admitted by Plaintiffs. Those now undisputed facts are as follows.

Ran-Mar and RHD are businesses located in Berlin, Vermont. In 2001, Ran-Mar owed delinquent property taxes to the Town for 1999 and 2000. McKee, Giuliani & Cleveland (MGC) is a law firm of which Gloria Rice is a member. The Town hired MGC and Rice to collect the delinquent taxes.

In January of 2001 Rice sent a letter to Ran-Mar advising it that she had been retained to collect the past due taxes for ten Ran-Mar properties, and requesting payment for the taxes, interest, an eight percent collector's fee, and a fifteen percent assessment for attorney's fees. The letter stated that if payment was not made by January 26, tax sales would be initiated. The

---

[1] Count 2 of the complaint (a claim of unjust enrichment) is not before the court at this time.

president of Ran-Mar contacted Rice and asked for additional time to pay the delinquent taxes. Either in this conversation or a later one, he also asked about the attorney's fees, and was told they were non-negotiable.

On March 13, 2001, payments had not yet been made. Rice sent another letter to Ran-Mar stating that she was preparing for tax sales. On March 15, Ran-Mar wrote Rice a letter offering to pay all the taxes, interest, and eight percent fee but not the attorney's fees. Rice did not respond to the letter. On March 27, 2001, Ran-Mar paid the past due taxes, interest, penalties and attorney's fees for two properties. Ran-Mar noted that it was paying the attorney's fees under protest. On April 10 Ran-Mar wrote to Rice stating that if she dropped the claim for the attorney's fees, Ran-Mar would pay the balance due on the other properties. Rice did not respond.

On April 10, 2001, on behalf of itself and Ran-Mar, RHD applied for a line of credit from Chittenden Bank to fund construction of a development in Berlin. The proposed security for the loan included some of the Ran-Mar parcels for which there remained outstanding delinquent taxes. While the application was pending, a representative of the bank contacted the town tax collector to find out whether any delinquent taxes were owed. The tax collector referred the bank to Attorney Rice. Rice informed the bank of the delinquent taxes that remained unpaid. She did not mention that Ran-Mar had offered to pay the taxes if the fee request was dropped. As a result of the information provided by Rice, as well as past overdrafts and a slow payment history, the bank denied the loan application. The bank had previously denied another loan application by Ran-Mar in February, for reasons unrelated to the tax delinquencies.

Sometime after May 2, 2001, Plaintiffs did pay the remaining past due taxes and penalties for 1999 and 2000, but not the attorney's fees.

MGC and Rice have done tax collection work for the Town since at least 1991. The work is done pursuant to an oral contract with the Town. The agreement was that the attorneys would collect taxes for all properties referred by the Town, and for each successful collection they would be paid a flat fifteen percent of the amount collected. The payments for the attorney's fees were made by the taxpayers to the Town. After each successful collection, the attorneys would bill the Town, and the Town would pay the bill.

At no time have the attorneys kept track of the time spent on collection work with respect to particular property owners. Rice estimated that the minimum amount of time she had spent to successfully collect delinquent taxes form a property owner had been one hour. Her standard fee for legal services is $125 per hour.

At the time the attorney's fees were assessed Ran-Mar, the Town had not created or recorded a warrant and levy, nor had the Town obtained approval of the selectboard to charge the taxpayer with payment of the attorney's fees. Since 1991, the Town has assessed a fifteen percent attorney's fee regardless of the time spent by Rice or her firm on collecting the taxes. Since 1991, the Town selectboard has never authorized such attorney fee assessments. The assessment in this case was imposed by the Town immediately upon referral of the collection matter to the attorneys.

<u>Procedural History</u>

This case was filed by the taxpayers against the Town in 2001. In June of 2002, MGC and Rice were added as defendants. In July 2002, the case was removed to federal court. In July of 2004, in ruling on a motion for summary judgment, the federal court determined that it lacked jurisdiction because of the federal Tax Injunction Act (TIA), 28 U.S.C. § 1431. That statute in essence bars federal courts from ruling on state tax disputes unless the plaintiff lacks a "plain,

speedy and efficient remedy" in state court. Concluding that under federal law the attorneys' fees constitute a "tax," the court found that the TIA applied and remanded the case to this court.

In September 2004, MGC and Rice moved to dismiss the case against them. In December, 2004, Judge Katz granted the motion as to all but the claim for tortious interference. The grounds for his ruling were twofold: (1) the amendment bringing in the attorney defendants was barred by the statute of limitations, and (2) the claim under 42 U.S.C. § 1983 was barred by the TIA.

In January 2005, plaintiffs amended the complaint to, *inter alia*, delete the claim under 42 U.S.C. § 1983. They simultaneously moved for reconsideration on the balance of Judge Katz's ruling, arguing *inter alia* that the statute of limitations had not run because the time runs from the date of levy, and no levy had ever been made. In July 2005, Judge Katz agreed and granted the motion for reconsideration. He thereby effectively reinstated all claims except those asserted under 42 U.S.C. § 1983.

## Conclusions of Law

There are three claims before the court at this time: (1) a claim for declaratory relief based upon statute, (2) a claim for declaratory relief based upon the Vermont Constitution, and (3) a claim for tortious interference with contractual relations.

### 1. The Statutory Claim

Under Vermont law, a municipality may charge taxpayers attorney's fees in connection with tax collection under the following circumstances:

> The fees and costs allowed after the warrant and levy for delinquent taxes have been recorded shall be as follows: Levy and extending of warrant, $10.00; recording levy and extending of warrant in town clerk's office, $10.00, to be paid the town clerk; notices and publication of notice, actual costs incurred; and *expenses actually and reasonably incurred by the tax collector for legal assistance in the preparation for or conduct of said sale when authorized by*

5

*the selectmen, provided that such expenses shall not exceed fifteen percent of the uncollected tax*; travel, reimbursement at the rate established by the contract governing state employees; attending and holding sale, $10.00; making return $10.00 and recording same in town clerk's office, to be paid town clerk $10.00; collector's deed $30.00; *which fees and costs, together with the collector's fee of eight percent shall be in lieu of any or all other fees and costs permitted or allowed by law*.

32 V.S.A. § 5258 (emphasis added).

Plaintiffs argue that the statute does not authorize the fees in this case. They seek a declaratory judgment so stating, as well as an injunction barring the defendants from assessing such fees in the future. *See* Third Amended Complaint ¶ 40. MGC and Rice argue that it is the Town, not they, which charges the fees, and that this statutory claim thus cannot be asserted against them. In addition, they argue that the statute does not bar the attorney fee assessments. The Town presents no arguments.

## 2. The Claim Against MGC and Rice

The court agrees that the statutory claim cannot be asserted against MGC or Rice. The statute is directed to the Town, and the attorney's fees are assessed by the Town. The tax notice reflecting the fifteen percent fees was issued by the Town and directed that checks for the entire tax bill, including the attorney's fees, be made out to the Town. MGC and Rice acted as the Town's attorneys in collecting the taxes and fees, but they did not assess them. Thus, the court concludes that the statutory claim cannot be asserted against MGC or Rice.

## 3. The Claim Against the Town

The fees assessed here were a flat fifteen percent of the overdue taxes, regardless of how much time or effort the lawyers expended doing collecting the fees. This has been the Town's practice. Thus, if a taxpayer owes $50,000 in back taxes, once the matter is referred to the

lawyers, the Town assesses $7,500 in attorney's fees regardless of whether the lawyers collect the taxes after writing one letter or after many hours of work.

This clearly does not comply with the statute, which sets fifteen percent as a cap, not a floor. The statute states that the fees may not *exceed* fifteen percent, but the fees must be those "actually and reasonably incurred by the tax collector for legal assistance" in the tax sale. 32 V.S.A. § 5258. Fees of fifteen percent regardless of the amount of work involved are not "reasonably incurred."

Moreover, the statute permits the assessment of attorney's fees to the taxpayer only "after the warrant and levy for delinquent taxes have been recorded" and it is undisputed in this case that the warrant and levy had not been recorded at the time the attorney's fees were assessed. Thus, the statute does not authorize the fees.

The statute also states that attorney's fees shall not be charged unless "authorized by the selectmen," and it is undisputed that the selectboard did not authorize the fees in this case.

Nor does the court see any other source for the assessment of the attorney's fees in this case. The statute itself states that the fees and costs set forth therein "together with the collector's fee of eight percent shall be in lieu of any or all other fees and costs permitted or allowed by law." 32 V.S.A. § 5258. The Town has pointed to no other authority to charge taxpayers for the Town's attorney's fees.

Thus, the court grants the plaintiffs' motion with regard to the statutory claim against the Town.

### 4. The Constitutional Claim

Ran-Mar argues that the assessment of attorney's fees violates equal protection guarantees. Ran-Mar refers to both federal and state constitutional claims in its reply memo.

Because the federal constitutional claim was dismissed by Judge Katz, only the state constitutional claim remains for this court to address.

MGC and Rice argue that such claims can be asserted only against state actors, not against private parties. They further argue that there is no equal protection violation here. The court does not reach the issue of whether the attorneys can be liable in this case for acting in concert with the Town, because the court finds there was no constitutional violation.

What Ran-Mar argues is that because each delinquent taxpayer ends up paying a different dollar amount in attorney's fees (based upon the amount of taxes overdue), not all taxpayers are treated equally. In other words, they argue that if two cases each involve one hour of work, one property owes $100,000 in taxes and the other owes $10,000, they will be charged hourly rates of $15,000 and $1,500 per hour respectively. They argue that this is an irrational and arbitrary approach.

Because Ran-Mar refers only to the federal terminology of "equal protection," it is unclear what Vermont constitutional provision they believe applies: the Proportional Contribution Clause or the Common Benefits Clause. *See, e.g.*, USGen New England, Inc. v. Rockingham, 2003 VT 102 ¶ 28, 176 Vt. 104 (2003) (discussing difference between the two clauses). Under either one, however, the "rational basis" test applies. Id. ¶ ¶ 15 and 29. Thus, Ran-Mar has the burden of showing that the imposition of the attorney's fees cannot "be reconciled with any conceivable state of facts that might lend it rationality." Id. ¶ 26, *quoting* In re Property of One Church Street, 152 Vt. 260, 270 (1989). In the arena of taxation, heightened deference is appropriate. USGen, ¶ 17; Nordlinger v. Hahn, 505 U.S. 1, 11 (1992).

The fact is that all delinquent taxpayers in Berlin whose cases are referred to attorneys for collection are charged the same percentage: fifteen percent of their delinquent taxes. While it

may lead to different fees, it is not entirely irrational for the Town to choose such an approach, just as they charge eight percent late fees. *Accord*, Rouge Parkway Associates v. City of Wayne, 377 N.W.2d 748 (Mich. 1985). The court finds no constitutional violation.

## 5. The Claim for Tortious Interference

The complaint alleges that Rice "provided limited information, and failed to disclose other material information to the Bank in a concerted effort by Defendants to harm Ran-Mar and RHD, to interfere with their existing and/or prospective business relationship with the Bank, and/or to force Ran-Mar to pay the illegal attorney's fee assessment." Third Amended Complaint ¶ 25. Although pleaded to include both interference with an existing contract and interference with prospective contractual relations, the undisputed facts in this case establish that there was as yet no contract.

To establish tortious interference with prospective contractual relations, a plaintiff "must prove that the defendant interfered with business relations existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or improper." Gifford v Sun Data, Inc., 165 Vt. 611, 613 (1996). There is not a single fact asserted in Plaintiffs' statement of material facts that establishes that Rice's "sole purpose' was to interfere with the loan application. To the contrary, the undisputed facts demonstrate that Rice was merely doing her job: seeking to collect fees as asked by the Town and answering an ordinary inquiry from a bank.

Nor is there any evidence of "dishonest, unfair, or improper" acts by Rice. Gifford at 613. Rice merely responded to a routine inquiry from a bank concerning taxes. She did not initiate the contact. She gave accurate information. She had no obligation to tell the bank every detail of the dispute between the Town and Ran-Mar. There are no facts put forth to suggest that there was

9

anything improper about her actions. Providing accurate information "within the scope of the request" made is not improper interference. Restatement (Second) of Contracts § 772 , *cited in* Williams v. Chittenden Trust Co., 145 Vt. 76, 83 n. 4 (1984).

For all of these reasons, the court grants GMC and Rice's motion for summary judgment as to the tortious interference claim.

### 6. Tax vs. Fee

MGC and Rice ask the court to address an issue raised previously before Judge Katz but never ruled upon: whether the claims in this case are barred by 32 V.S.A. § § 5291 and 5292 for failure to exhaust administrative remedies before filing suit. While the issue should have been brought to Judge Katz's attention at the time of his earlier ruling by way of a motion for reconsideration or clarification, in the interests of finality and judicial economy the court will address it.

What Defendants argue is that the statutory provisions cited require a taxpayer to take certain steps to challenge "the validity of some part or all of a tax." 32 V.S.A. § 5291. Those steps include filing a certified copy of the objections with the Town by January 15 of the year after the tax is assessed. Id. and § 5292. MGC and Rice thus argue that because no such filing ever occurred, this action must be dismissed.[2]

The court disagrees. The issue in this case is attorney's fees, not an assessment of taxes. As stated by our Supreme Court:

> Whether or not these plaintiffs may challenge the validity of the taxes
> previously assessed, they are entitled to raise defenses against improper or

---

[2] While the fact that no formal objection was filed is not set forth in any of the statements of material facts, the parties by their arguments have conceded this to be the case. Plaintiffs argued previously that their sending a check with the notation "attorney and collection fees paid under protest" met the requirement of the statute, thus conceding that no other formal protest was filed. *See* Plaintiffs' Memorandum in Opposition to Motion to Dismiss, p. 11 (filed Sept. 28, 2004). The court does not find the notated check sufficient, as it did not meet the formal requirements of the statute: certification and a specification of the objections. 32 V.S.A. § 5291.

> defective actions looking to collection. These are issues outside the validity of the assessment referred to in 32 V.S.A. § § 5291 and 5292.

Dike v. McCormick, 128 Vt. 349, 350 (1970). While Defendants argue that Dike is distinguishable because it dealt with lack of notice of a tax sale, the court is not persuaded. The point of Dike is a distinction between assessing the amount of taxes due and the steps that follow in its collection. Here, taxpayers do not dispute the amount of their property taxes, or even the penalties. Instead, they challenge the add-on fees that are part of the collection process. This Dike permits them to do without exhausting administrative remedies.

Nor is it relevant that the federal court determined that, under federal law applicable to the federal Tax Injunction Act, the fees here would be considered a tax. This is not "law of the case," because it construed an entirely different statute and applied federal, not Vermont, law.

### Order

The court grants MGC and Rice's motion for summary judgment on the statutory claim (Count 1), constitutional claim (Count 3), and tortious interference claim (Count 4). The court grants Ran-Mar and RHD's motion for summary judgment against the Town on the statutory claim (Count 1). In addition, the court denies the Plaintiffs' motion for summary judgment against the Town on the Vermont constitutional claim (Count 3) and instead grants summary judgment for the Town on that claim.[3]

Because Count 2 (unjust enrichment) remains in the case against the attorneys, the court will defer issuance of judgment until that claim is resolved. A status conference will be set to determine when and how that claim will be resolved.

---

[3] While the Town did not affirmatively move for judgment on the constitutional issue, the court's analysis of the issue leads inexorably to judgment for the Town on that claim.

Dated at Montpelier this 30th day of November, 2005.


_____
Helen M. Toor
Superior Court Judge