J-A15039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMERICAN ASPHALT PAVING CO. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KRIGER CONSTRUCTION, INC. | : | No. 1407 MDA 2023 |

Appeal from the Order Entered September 26, 2023
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2019-10892

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED: AUGUST 20, 2024**

Appellant, American Asphalt Paving Co., appeals from the order entered

in the Luzerne County Court of Common Pleas entered on September 26,

2023, which granted Appellee's motion for summary judgment. After a careful

review, we reverse the order granting summary judgment.

The relevant facts and procedural history are as follows:

Plaintiff American Asphalt Paving Co. (AAP) and Defendant
Kriger Construction, Inc. (Kriger) are both business entities
engaged in the paving industry. In 2019, PennDOT issued a
request for bids for the repair and paving of the Sans Souci
Parkway in the City of Wilkes-Barre. Kriger was the only contractor
to submit a bid, but the bid was rejected according to PennDOT's
procedures. Following this, PennDOT solicited bids from AAP and
another contractor via an e-mail dated June 28, 2019. Then,
PennDOT issued an Emergency Procurement Authorization on July
17, 2019. AAP was awarded the contract. Kriger's counsel, upon
learning of this process, contacted PennDOT's counsel and stated

_____

[*] Former Justice specially assigned to the Superior Court.

that Kriger intended to file an injunction for violations of the procurement code if the work was not stopped and bid properly. Subsequently, PennDOT stopped work on the project, re-bid the contract, and the contract was eventually awarded to a non-party contractor.

On August 30, 2019, [AAP] filed a complaint against Kriger alleging Intentional Interference with Contractual Relations. Following two sets of Preliminary Objections and two Amended Complaints, a third set of Preliminary Objections was filed and [the trial court] entered an Order on August 21, 2020 overruling the same. A Status Conference was held on December 7, 2022 wherein a scheduling Order was established, and Trial was set to begin on January 2, 2024 before [the trial court].

On April 28, 2023, Defendant Kriger filed their Motion for Summary Judgment. Plaintiff [AAP] filed a Motion for Partial Summary Judgment on May 1, 2023. [The trial court] granted Defendant's Motion for Summary Judgment on September 26, 2023, disposing of the matter in its entirety.

Tr. Ct. Op. at 1-2 (unpaginated).

On the same day, the trial court denied AAP's motion for partial summary judgment as moot. On October 6, 2023, AAP filed a timely notice of appeal of the trial court's grant of summary judgment. The trial court issued an Order on October 12, 2023 pursuant to Pa.R.A.P. 1925(b), requiring AAP to file a statement of errors complained of on appeal. AAP filed its Rule 1925(b) statement on November 7, 2023. In response, the trial court issued its Pa.R.A.P. 1925(a) opinion.

Appellant raises one issue with subparts for our review:

I. Whether the trial court erred in granting Appellee Kriger Construction, Inc.'s motion for summary judgment where:
    (1) the question of Appellee's intent in taking the actions that it did which interfered with Appellant's contractual relations represent a genuine dispute as to a material fact which must

- 2 -

be determined by a jury and not by the court on summary judgment; and

(2) the trial court's decision that Appellee was justified in taking the actions it did was erroneous in that:

(a) a genuine issue of fact exists surrounding the circumstances of Appellee's actions which, as with Appellee's intent, must be determined by a jury; and

(b) the trial court committed an error of law in determining that Appellee's actions were legally justified.

Appellant's Br. at 4.

In reviewing a grant of summary judgment, this Court's standard of review is de novo and our scope of review is plenary. *Pyeritz v. Commonwealth of Pa., State Police Dep't*, 32 A.3d 687, 692 (Pa. 2011). A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010). The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. *Id*. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007). An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion. *Id.* at 1159.

- 3 -

Here, the trial court granted summary judgment in favor of Kriger, determining that AAP could not meet the four necessary elements of intentional interference with contractual relations. Our Supreme Court has set forth the elements to state a cause of action for intentional interference with contractual relations as follows:

> (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

**Salsberg v. Mann**, 310 A.3d 104, 137 n.2 (Pa. 2024). In addition, the Pennsylvania Supreme Court has adopted provisions of the Restatement (Second) of Torts as part of the larger scheme defining the concept of intentional interference with contractual relations. **See Walnut St. Assocs. v. Brokerage Concepts, Inc.**, 20 A.3d 468, 476 (2011).

Here, the trial court admits, as to element one, the existence of a contract between AAP and PennDOT, and that the contract was terminated. Tr. Ct. Op. at 1, 3. The trial court does not address the fourth issue of damages because is concludes that elements two and three, intent and justification, cannot be met. The trial court notes that "[t]he nature of [the parties'] arguments necessarily intertwines the intent to harm with justification." Tr. Ct. Op. at 5. The trial court further states, "based on the facts of this matter, whether there was an intent to harm is reliant on whether there was

- 4 -

justification, and thus, this court sees AAP's failure to meet element three as dispositive." *Id*.

THE PARTIES' ARGUMENTS ON INTENT

Appellant, AAP, argues that the trial court erred in granting summary judgment when there are still genuine issues of material fact present. Appellant's Br. at 12. AAP submits that the trial court erred in finding with respect to two elements of intentional interference with contractual relations that there was no intent on Kriger's part to harm AAP when it threatened litigation, and that Kriger was justified in threatening litigation. *Id*.

Regarding the intent element, AAP argues that Kriger's intent to interfere with AAP's contractual relations with PennDOT is clear from the record. *Id*. AAP takes issue with the trial court's analysis of the "truthfulness" of the statement that Kriger would file a lawsuit. Appellant's Br. at 19. AAP argues that the trial court intertwined the elements' analyses and incorrectly determined that as long as it was "true" that Kriger actually intended to file a taxpayer suit, the fact that the threat of litigation is what caused PennDOT to terminate the contract cannot be seen as Kriger's "intent to harm" AAP. *Id.* at 19-20.

Since Kriger's counsel admitted that he intended to achieve the termination of AAP's contract with PennDOT, and that goal was achieved, Kriger's intent to harm AAP is clear on its face. Appellant's Br. at 23. Even if the intent is not clearly evidenced by the record, AAP argues that the determination is solely for a jury to make. *Id.* at 24-27. A jury may find that

Kriger's threat of litigation was a noble effort on behalf of the taxpayer to assure compliance with the Procurement Code, or a jury may believe that Kriger improperly threatened litigation to damage the business interests of AAP, its competitor. ***Id.*** at 24.

Appellee, Kriger, submits that the trial court properly granted summary judgment against AAP because no genuine issue of material fact exists. Appellee's Br. at 14. Kriger argues that AAP was required to make a showing that "Kriger acted for the specific purpose to cause harm to AAP when its counsel contacted PennDOT about the unbid Parkway Work." ***Id.*** at 15. We reject this notion.

ANALYSIS OF INTENT

In order for a plaintiff to prove the intent element, he must show "an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship." ***Salsberg, supra.***

> The rule stated in this Section is applicable if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere, even though he acts for some other purpose in addition. The rule is broader, however, in its application than to cases in which the defendant has acted with this purpose or desire. It applies also to intentional interference, as that term is defined in § 8A, in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. ***The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.***

Restatement 2d of Torts, § 766 cmt. j (emphasis added).

As to intent, the trial court concluded:

First, there was no evidence provided to the Court from any deposition, document production, or interrogatory that specifically evidences any intent to harm AAP. Second, in addressing this element in their Brief, AAP does little more than state that Kriger "clearly intended to harm AAP." AAP cites *Geyer v. Steinbron*, 506 A.2d 901 (Pa. Super. 1986) to bolster the argument that this element should be left to a jury. However, in *Geyer*, the Superior Court addressed a Judgment Notwithstanding the Verdict, specifically emphasizing the fact that a Jury had already heard the testimony and determined that the statements made in that case were not truthful information. *Id*. Based on the facts of this matter, whether there was an intent to harm is reliant on whether there was justification, and thus, this Court sees AAP's failure to meet element three as dispositive.

Tr. Ct. Op. at 5 (unpaginated).

We do not agree with the trial court's attempt to distinguish *Geyer*. The trial court indicates that *Geyer* does not stand for the proposition that it is the jury's role to determine the intent element because, in that case, a jury had already considered all of the elements. In *Geyer*, we stated:

This Court held in *Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611 (1980), that the intent to cause harm element "must be understood as requiring only an intention to interfere with the plaintiff's prospective contractual relation and not malevolent spite by the defendant." 281 Pa.Super. at 581, n. 11, 422 A.2d at 622, n. 11. Obviously it will be the rare defendant who boldly declares that he in fact did intend to interfere with the plaintiff's prospective contractual relation. **Therefore, the jury usually will be called upon to draw an inference from circumstantial evidence.** The defendant's state of mind and possible motives are certainly relevant to the inquiry even if ill will per se is not a requisite.

*Geyer*, 506 A.2d at 910 (emphasis added).

AAP cites numerous cases in addition to **Geyer** for the proposition that the intent of the parties is a question for the jury. **See** Appellant's Br. at 24-26.[1] Relevantly, AAP also quotes section 767 of the Restatement (Second) of Torts which states, "The jury determines whether the defendant's interference with the plaintiff's advantageous relation was intentional or not." **Id.** at cmt. l.

We agree that the trial court's determination that there could be no genuine issue of material fact as to "intent to harm" was in error and Kriger is not entitled to summary judgment as a matter of law. We are persuaded by AAP's contention that a jury may find that Kriger's threat of litigation was a noble effort on behalf of the taxpayer to assure compliance with the Procurement Code, or a jury may believe that Kriger improperly threatened litigation to damage the business interests of AAP, its competitor. Appellant's Br. at 24.

THE PARTIES' ARGUMENTS ON TRUTHFULNESS DEFENSE

We find it necessary to discuss the truthfulness defense and to clarify its impact on the elements of intentional interference with contractual

---

[1] **In re Bell**, 176 A.3d 423, 426 (Pa. Cmwlth. 2017); **Wallace v. Wallace**, 371 Pa. 404, 89 A.2d 769, 771 (1952); **Krause v. Great Lakes Holdings, Inc.**, 563 A.2d 1182, 1186 (Pa. Super. 1901); **Johnston v. Johnston**, 499 A. 2d 1074, 1076 (Pa. Super. 1985); **Luzerne Nat. Bank v. Hanover Ins. Co.**, 49 Pa. D. & C.3d 399, 405 (Pa. Com. Pl. 1988); **Egan v. USI Mid-Atl., Inc.**, 92 A.3d 1, 21 (Pa. Super. 2014); **United States v. Fumo**, 628 F. Supp. 2d 573, 592 (E.D. Pa. 2007); **Gifford v. Sun Data, Inc.**, 165 Vt. 611, 612, 686 A.2d 472, 473-74 (1996)).

relations and its applicability to this case, as the trial court and parties have each addressed it.

AAP acknowledges Pennsylvania caselaw and the Restatement (Second) of Torts which recognizes a "truth defense" to the statement which causes the termination of a contract, positing that the truth defense echoes defamation jurisprudence and would not apply here. Appellant's Br. at 20. In cases discussed *infra*, this Court and our Supreme Court have held that where a non-party makes a disparaging statement about one party to a contract, and that statement induces the other party to terminate the contract, there can be no liability for tortious interference when the matter asserted in the statement is true. Appellant's Br. at 20-21. Thus, AAP argues, if Kriger had told PennDOT that AAP lacked the abilities to fulfill the contract, and that statement induced PennDOT to terminate the contract, a "truthfulness" analysis would be warranted into the statement. If it turned out that it was true that AAP lacked the abilities to fulfill the contract, Kriger could avoid liability. *Id.* at 21-22.

Here, however, Kriger's statement that caused PennDOT to terminate the contract was its threat of taxpayer litigation, not a disparaging comment about the quality of AAP's work or abilities. Appellant argues that the trial court erred in determining that because the statement was true—Kriger's counsel stated in his deposition that he did in fact intend to file the lawsuit— that Kriger could not have intended to harm AAP and thus cannot be liable for intentional interference. Appellant's Br. at 22-23.

Kriger argues that the "well-settled truthfulness defense" applies to this case, and that its statement to PennDOT was truthful, justified, and not intended to harm AAP. Appellee's Br. at 14. Kriger argues that there is no genuine issue as to the truthfulness of its statement to PennDOT, and because it was truthful information, it can have formed the basis for PennDOT's termination of its contract with AAP and still not be tortious interference. Appellee's Br. at 22.

ANALYSIS ON TRUTHFULNESS DEFENSE

The "truthfulness defense" is as follows:

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person
> (a) truthful information, or
> (b) honest advice within the scope of a request for the advice.

Restatement 2d of Torts, § 772.

The truthfulness defense applies to the third element, justification. While the conflation of the intent and justification elements is consistent with caselaw, *see, e.g., Glenn v. Point Park Coll.*, 272 A.2d 895, 899 (Pa. 1971) (stating "The absence of privilege or justification in the tort under discussion is closely related to the element of intent"), the Restatement and recent caselaw make clear to us that any discussion of the truthfulness defense or the propriety or impropriety of the defendant's actions falls under the justification element.

The Restatement provides:

***In determining whether an actor's conduct*** in intentionally interfering with a contract or a prospective contractual relation of another ***is improper or not***, consideration is given to the following factors:
(a) the nature of the actor's conduct,
(b) the actor's motive,
(c)  the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f)  the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

Restatement 2d of Torts, § 767 (emphasis added).

While the above Restatement section provides factors to consider in determining if a defendant's conduct was proper or improper, "in situations where a Section 772(a) truthfulness defense is raised against claims of tortious interference, analysis of the general factors enumerated in Section 767 is not necessary." ***Walnut St. Assocs. v. Brokerage Concepts, Inc.***, 20 A.3d 468, 477 (Pa. 2011); ***see also*** Restatement 2d of Torts, § 772 cmt. a ("[The truthfulness defense] Section is a special application of the general test for determining whether an interference with an existing or prospective contractual relation is improper or not"). Thus, the truthfulness defense, as well as the "improper conduct" analysis, applies directly to the justification element.

In ***Walnut St.***, while discussing a case which analyzed the elements of intentional interference, the Supreme Court stated, "[t]he Court went on to consider whether the former Adler Barish associates' intentional

interference with client contracts **was privileged and justified, or whether it was 'improper.'"** (citing **Adler, Barish, Daniels, Levin & Creskoff v. Epstein**, 393 A.2d 1175 (Pa. 1978) (emphasis added)). Thus, it is clear that our Supreme Court has juxtaposed "improper" conduct with "justified" conduct.

The trial court conflated the intent and justification elements. **See** Tr. Ct. Op. at 4-5 (unpaginated). The trial court correctly recognizes that "whether [Kriger's threat of litigation] was 'true' in the sense of having a legal basis is an application of the third element of Intentional interference; whether Kriger was justified in claiming they would be pursuing legal action." **Id.** at 4. However, the trial court analyzed the "intent to harm" element as follows:

> _Intent to Harm_
> As to an intent to harm, the Superior Court in **Empire Trucking**[2] describes the factors adopted from the Second Restatement of Torts: "In order to succeed in a cause of action for Intentional interference with a contract, a plaintiff must prove **not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper.** In determining whether a defendant's actions were **improper**, the trial court must take into account the following factors listed in Restatement (Second) of Torts section 767: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties."

Tr. Ct. Op. at 4 (emphasis added).

---

[2] **Empire Trucking Co. v. Reading Anthracite Coal Co.**, 71 A.3d 923 (Pa. Super. 2013).

The trial court sets up its intent element analysis by listing the factors for the justification element. And, as stated above, it is not necessary to consider these factors "in situations where a Section 772(a) truthfulness defense is raised against claims of tortious interference," as it was here. **Walnut St.**, 20 A.3d at 477.

We acknowledge the truth defense to a claim of interference with contractual relations and do not disturb it. However, we find that this is an instance where truthfulness does not apply. It would be illogical to analyze the truthfulness of a statement to determine liability unless the matter asserted in the statement was about the party to the contract and led to the termination of the contract.

It is undisputed that the occurrence giving rise to this action was the statement made by Kriger's counsel to PennDOT's counsel threatening to bring a taxpayer suit in the Commonwealth Court for a violation of the procurement code if the work was not stopped and put through a proper bidding process. As a result, PennDOT issued a stop work order to AAP. Tr. Ct. Op. at 3 (unpaginated).

When our Supreme Court formally adopted the "truthfulness defense" from the Restatement into Pennsylvania law, it said it did so because "we believe the formulation is consistent with the very nature of the tort, and with Pennsylvania law." **Walnut St.**, 20 A.3d at 479. The Supreme Court went on to state:

And, in this instance, we need not belabor the reasons why we believe that the elaboration is a proper understanding of what comprises improper conduct. The Restatement commentary we have set forth above amply explains why the conveyance of truthful information cannot reasonably be deemed to be "improper" interference. It would be strange, indeed, to deem disclosures of mere truth to be actionable. Those who would shield their contracting partners from non-privileged information that might affect those partners' business decisions properly run a risk that speech in the form of a truth, when disclosed, might imperil the relationship. Application of these precepts to the facts in this case leads us to hold as a matter of law that [the defendant]'s truthful statement to [the contracting party] about [plaintiff] was not an improper interference, and cannot, on its own, support a claim for tortious interference with contractual relations.

*Id*.

The Court may not have needed to belabor the point in that instance, because the statement that induced the contracting party to terminate the contract was true information regarding the nature of business dealings of the plaintiff. Here, the statement that induced PennDOT to terminate the contract with AAP was its threat of litigation if the contract was not terminated. We find AAP's argument persuasive that "the 'truthful' statement must be related to the party alleging tortious interference or to the nature of the contract itself, not to some ancillary action the accused intends to take." Appellant's Br. at 21.

Imagine an example where an engaged couple enters into a contract with a musician to play music at their wedding. A non-party who does not like the couple and wants to see the wedding get ruined tells the musician a few days before the wedding that he will give the musician concert tickets to meet with the musician's favorite band. The non-party knows that the band meet-

and-greet and concert is to take place on the same day as the wedding. The musician, wanting so badly to meet his favorite band, terminates the contract to perform at the couple's wedding. If the couple sues the non-party, it would not make sense to conclude that because the non-party's statement about having concert meet-and-greet tickets was true, that the non-party did not improperly interfere. In that case, the truth of the statement is irrelevant.

On the other hand, imagine a scenario where after the couple and the musician enter into the contract, a non-party who does not like the musician and wants to see the musician lose his gig tells the couple that the musician actually does not know how to sing or play instruments. The couple then terminates the contract with the musician. If the musician sues the non-party for intentional interference, a truth analysis would be required to determine if the musician does in fact know how to sing and play instruments, or if it was truthful and thus not improper.

We find this case to be similar to the first example, where the statement that induced PennDOT to terminate the contract was not regarding AAP's abilities, dealings, or the contract itself. We hold that when the statement that causes the termination of the contract is related to some ancillary action unrelated to the contract or contracting parties, the truthfulness defense in Restatement section 772 is inapplicable. Indeed, the comment to section 767

contemplates when the threat of civil litigation is tortious.[3] It would be an unreasonable result if each time someone threatened litigation and truly intended it, there could never be liability for the interference being improper.

Instead, when a truthfulness defense is not raised or does not apply, the factors in section 767 should be considered in determining whether the interference was improper or whether it was justified. In addition, where, as here, the statement that causes a party to terminate the contract is a threat of litigation, an analysis could be made into whether the defendant was asserting in good faith, or threatening to assert in good faith, a bona fide legally protected interest or claim. Restatement (Second) of Torts § 773. As the trial court correctly points out, whether the party threatening to bring the lawsuit would have standing is an appropriate sub-analysis in determining if the defendant acted in good faith. Tr. Ct. Op. at 9 (unpaginated).

_____

[3] *Prosecution of civil suits.* In a very early instance of liability for intentional interference, the means of inducement employed were threats of "mayhem and suits," and both types of threats were deemed tortious. Litigation and the threat of litigation are powerful weapons. When wrongfully instituted, litigation entails harmful consequences to the public interest in judicial administration as well as to the actor's adversaries. The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication. (See §§ 674-681B).
Restatement 2d of Torts, § 767 cmt. c.

We conclude that the trial court erred when it determined as a matter of law that there were no genuine issues of material fact and that Kriger was entitled to summary judgment. Accordingly, we reverse the trial court's order granting Kriger's motion for summary judgment.

Order reversed.

Judge Beck joins the decision.

Judge Dubow concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/20/2024