STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| | } | |
| In re: Geddes 9-Lot Subdivision | } | Docket No. 101-5-07 Vtec |
| (Appeal of Additional Appellant Lindala) | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellants Michael Curry and Deborah MacFarlane originally appealed from a decision of the Planning Commission of the Town of Bakersfield approving Appellee-Applicants Gary and Gloria Geddes' subdivision application as a Planned Residential Development (PRD) or Planned Unit Development (PUD). Additional Appellant Roger Lindala filed a timely notice of appeal of the same decision.[1]

Appellants are represented by Thomas G. Walsh, Esq.; they have entered into a settlement with Appellee-Applicants that has resulted in the dismissal of their appeal with certain contingencies, entered as a court order in this matter on March 24, 2008. Appellee-Applicants are represented by Joseph F. Cahill, Esq. Additional Appellant Lindala has appeared and represents himself.

Appellee-Applicants and Additional Appellant Lindala have moved for summary judgment on all the questions in the Lindala Statement of Questions. The Court did not have the benefit of any memorandum from the Town of Bakersfield as to the adequacy of its Zoning Bylaws, as the Town did not enter an appearance or otherwise participate in this appeal. The following facts are undisputed unless otherwise noted.

---

[1] Mr. Lindala's Statement of Questions incorporated Appellants' original ten questions by reference, and added his own questions 11 through 14; references in this decision will be to each question number rather than to its original source document.

1

Appellee-Applicants own an approximately 100-acre parcel of property located at 1697 Egypt Road in the Town of Bakersfield, in the Rural zoning district. Appellant Lindala owns property adjacent to and southeasterly of Appellee-Applicants' property.

Appellee-Applicants initially submitted a subdivision application for sketch plan approval in September of 2005, for a nine-lot subdivision consisting of seven ten-acre lots and two thirteen-acre lots, as well as what appears from the sketch plan to be a separate lot of approximately four acres consisting of the land lying under the subdivision roadway right-of-way. No information was provided as to whether that right-of-way was proposed to be deeded to the Town or to be held by a homeowners' association. The Planning Commission approved Appellee-Applicants' sketch plan on November 8, 2005.

The November 23, 2005 letter from the Planning Commission Chair advising Appellee-Applicants of the decision also suggested the "possibility" of a "clustered development" that would allow Appellee-Applicants to create the same number of lots, but on "much smaller parcels (hypothetically 2 acres)," either retaining the remaining land in some way protected from development or conveying it to the eventual lot owners as common land. The letter advised Appellee-Applicants that the Commission "would consider other options that might yield a better use of the land and provide [Applicants] with more flexibility as the process continues."

In light of the suggestions in the letter, Appellee-Applicants developed a new site plan, together with a draft Declaration of Planned Community (Declaration), and submitted it with a new subdivision application form on July 27, 2006. The new site plan shows nine lots, ranging from 29.4 acres down to 4.6 acres in size, with smaller apparent building envelopes, and with 65.3 acres shown as "open space/common land." It is unclear from the site plan how the "open space/common land" was intended to be treated, as it apparently is comprised of portions of the individual lot areas, although § 6.01(a) of the proposed Declaration defines the 65.3 acres shown as "open space/common land" as

2

making up the "common elements" of the planned community.

All of the lots except Lot 3 are proposed to have at least 275 feet of frontage on the subdivision roadway. Lot 3, located on an outside bend of the subdivision roadway, is proposed to have 158 feet of frontage. The draft Declaration states that it intends to create a common interest community pursuant to the statutory scheme found in Title 27A, creates a community association and governance structure, and imposes certain duties and liabilities upon the eventual lot owners.

As reflected in the Planning Commission's written decision, the application was considered by the Planning Commission both as a Major Subdivision and as a "Planned Residential Development." The Planning Commission recognized that it differed from an application for a conventional subdivision in its proposal for reduced-size lots, limited building envelopes, and areas designated as open space or common land. The Planning Commission did not mention the reduced frontage for Lot 3.

The Planning Commission considered the new application for a new Sketch Plan approval and approved it at its August 8, 2006 meeting. The Planning Commission considered the Preliminary Plat stage of subdivision approval at a public hearing on September 12, 2006, at a site visit held on October 3, 2006, and at public hearings on October 24 and November 14, 2006. The Planning Commission met and voted to approve the Preliminary Plat on December 27, 2006. The hearing on the Final Plat stage of subdivision approval was held on March 5, 2007, the Planning Commission held a deliberative session on the Final Plat stage of subdivision approval on April 2, 2007, and the Planning Commission granted Final Plat approval of the proposal, with six conditions, on April 10, 2007.

The Planning Commission imposed the following six conditions: (1) that only four building permits may be active at any one time (that is, that a new building permit may be granted only after a certificate of occupancy has been granted to conclude one of the four

3

pending building permits); (2) that a signed statement that the eventual buyers agree with the Declaration's covenants be recorded with each deed; (3) that the community association created by the Declaration would enforce restrictions on construction, particularly as they related to "Saturday work issues," with complaints being forwarded to the Zoning Administrator; (4) that fences would be upgraded to the satisfaction of [Appellants Curry and MacFarlane]; (5) that the developer "should revise the covenants" to include language regarding wood-burning outdoor furnaces and thereafter "submit these to the Planning Commission for review;" and (6) that a final version of the covenants must be submitted to the Planning Commission.

Summary judgment is appropriate if the memoranda, depositions, answers to interrogatories, and affidavits, if any, "show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). When both parties seek summary judgment, the Court will give each party the benefit of all reasonable doubts and inferences when the opposing party's motion is being considered. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609, 611; In re: Gizmo Realty/VKR Assocs., LLC, Docket No. 199-9-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 30, 2008). When opposing a motion for summary judgment, a party may not rest on bare allegations alone, but must come forward with some affidavit or other evidence supporting the existence of disputed material facts. Johnson v. Harwood, 2008 VT 4, ¶ 5; In re: Scarborough Conditional Use Application, Docket No. 206-9-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Mar. 13, 2008).

Procedural status of the application

Applicants argue that the Zoning Bylaws adopted in 1994 should be applicable to the redesigned project, based on the date of the first proposal for sketch plan approval in

September of 2005, and the fact that the effective date of the more recent Zoning Bylaws was in August of 2006 (2006 Zoning Bylaws).

If the ten-lot conventional subdivision that received sketch plan approval in November of 2005 had been pursued by Applicants to the preliminary plat or final plat stages, Applicants may have been able to continue to proceed under the 1994 zoning bylaws in effect when the initial application was made for sketch plan approval. In re Handy, 171 Vt. 336, 350 (2000); In re Gizmo Realty/VKR Assocs., LLC, Docket No. 199-9-07 Vtec, slip op. at 7-8 (Vt. Envtl. Ct. Apr. 30, 2008).

However, Applicants instead availed themselves of the Planning Commission's suggestion to revise the project to apply for approval as a Planned Residential Development. The new application for the revised project was submitted for a new sketch plan approval on July 27, 2006. The relevant date is therefore when the 2006 Zoning Bylaws were first proposed for public comment, which neither party has provided, since under 24 V.S.A. § 4449(d) (in effect since July of 2001; formerly codified at § 4443(d)) an application must be considered under proposed regulations for 150 days after the regulations have been proposed. As the effective date of the new Zoning Bylaws was in August of 2006, they must first have been proposed for public comment before the revised application was filed at the end of July, and therefore the 2006 Zoning Bylaws are applicable.[2]

---

2 The term Planned Unit Development is defined in § 849 of the 2006 Zoning Bylaws in terms of the statutory definition, 24 V.S.A. § 4303(19), which encompasses the all-residential type of development that formerly was defined as Planned Residential Development under the former statute and bylaws. See also 24 V.S.A. § 4417; In re: Dodge Farm Community, LLC, Concept Plan, Docket No. 155-7-07 Vtec, slip op. at 3 n.1 (Vt. Envtl. Ct. Mar. 24, 2008). Section 303.6.3 of the Zoning Bylaws requires a Planned Unit Development to obtain conditional use approval from the Zoning Board of Adjustment, independently of obtaining any other approval within the jurisdiction of the Planning Commission. This appeal only addresses issues within the jurisdiction of the Planning Commission, as the

Question 1 of the Statement of Questions

Question 1 asks whether the Planning Commission hearing on the final subdivision review of the proposal was properly noticed in accord with Bakersfield Zoning Bylaws § 201.1.3 (and/or 24 V.S.A. § 4464). After reviewing material provided with regard to this issue, on March 29, 2008 Appellant Lindala informed the Court "that the point of Question 1 has been satisfied." Accordingly, Question 1 is hereby DISMISSED as MOOT.

Question 10 of the Statement of Questions

Question 10 asks whether the Planning Commission violated its procedural rules by allowing a Commission member who was not present for a hearing to participate in deliberative sessions.

The Planning Commission consists of five members, one of whom did not attend one of the hearings. Section IX of the Planning Commission's Rules of Procedure provides that "Absent [commission] members may participate if they have reviewed the audiotape of the proceedings, and any evidence submitted, subject to the written consent of the applicant and all interested persons." Mr. Lindala did not consent to that member's participation in the vote.

The Town of Bakersfield has not adopted the procedures necessary to have its appeals be on the record; rather, this Court considers the application de novo, applying the substantive standards applicable in the tribunal appealed from. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). In de novo cases the Court does not generally examine procedural defects at the municipal level, unless they are so egregious as to implicate basic questions of

_____

Court sits in place of only the Planning Commission in this appeal. In re: Leiter Subdivision Permit, Docket No. 85-4-07 Vtec, slip op. at 8 (Vt. Envtl. Ct. July 25, 2008) (citing In re Torres, 154 Vt. 233, 235 (1990)).

6

fairness and impartiality.  See, e.g., In re: JLD Props. – Wal Mart St. Albans, Docket No. 132-7-05 Vtec, slip op. at 4–8 (Vt. Envtl. Ct. Sept. 5, 2006) (board member's appearance of pre-judgment required Court to examine procedural defects at municipal level).  If a procedural defect is so inherently unfair that it calls the whole process into disrepute, the remedy is for the Court to remand the application to the municipal body to conduct a fair proceeding, rather than to deny the application.  Id. at 8.

Under state law, even in a case using the more formal proceedings necessary to have an appeal be considered on the record, an absent member is allowed to participate in the vote if that person listens to the recording of any missed testimony and reviews all the exhibits and other evidence, without regard to the consent of the participants.  24 V.S.A. § 1208(b).  Such procedure is also sufficient under Vermont law in order to comply with due process.  Lewandoski v. Vermont State Colleges, 142 Vt. 446, 452–53 (1983); In re: JLD Props. – Wal Mart St. Albans, slip op. at 9.

Thus, if the only procedural problem with the absent member's participation in the vote was the lack of consent from all the interested parties, such a requirement is not found in state law and is not so inherently unfair that it calls the whole proceeding into disrepute.  Accordingly, summary judgment is GRANTED to Appellee-Applicants on Question 10 of the Statement of Questions.

Questions 8 and 9 of the Statement of Questions

Questions 8 and 9 relate to the adequacy of the Declaration as a legal document, that is, whether the Declaration is legally insufficient to create a common interest community, either under Title 27A of the Vermont Statutes (the Uniform Common Interest Ownership Act) generally, or for failing to provide certain information and for improper execution under that statute.  27A V.S.A. § 2-105(a) (requiring a declaration to provide the name of common interest community and other descriptive information); § 2-101(a) (requiring a

7

declaration to be executed in the same manner as a deed).

This Court has statewide jurisdiction to hear certain matters specified by statute. See, e.g., In re: Britting Wastewater/Water Supply Permit, Docket No. 259-11-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 7, 2008) (citing 4 V.S.A. § 1001(a), (b) and 10 V.S.A. § 8504). When statements of questions raise issues beyond this Court's subject matter jurisdiction, those issues must be dismissed. See, e.g., In re: G.R. Enterprise, Inc. Sign Application, Docket No. 27-2-08 Vtec, slip op. at 3 (Vt. Envtl. Ct. May 12, 2008) (dismissing appeal of DRB's decision denying a sign application because the Court lacked subject matter jurisdiction over issues arising under the sign ordinance enabling statute).

This Court does not have subject matter jurisdiction over issues arising under Title 27A of the Vermont Statutes; therefore both Question 8 and Question 9 must be DISMISSED. 4 V.S.A. § 1001(b).


Question 5 and 7 of the Statement of Questions

Questions 5 and 7 relate to whether conditions imposed upon the subdivision's approval and required to be contained in the Declaration are unenforceable, as the Declaration can be later amended by the homeowners, and whether Conditions 5 and 6, allowing the revision and subsequent filing of the Declaration, deprived the interested parties of an opportunity to be heard.

For conditions imposed on a subdivision to be enforceable, they must be imposed in the decision of the Planning Commission, or in the decision of this Court in this de novo appeal. The Planning Commission cannot delegate that responsibility. In re: Appeal of Sunset Cliff, Inc., Docket No. 26-2-01 Vtec (Vt. Envtl. Ct. Nov 13, 2001); and see, e.g., Town of Westford v. Kilburn, 131 Vt. 120, 126 (1973). As long as they are also imposed in the decision, conditions may be required to be contained in a community's declaration as well.

However, what is at issue in the present appeal is whether these or different

conditions should be imposed <u>de</u> <u>novo</u> by the Court on the merits of the subdivision application. To that extent, Questions 5 and 7 remain for the hearing on the merits and summary judgment must be denied.

<u>Questions 2 and 14 of the Statement of Questions</u>

Questions 2 and 14 ask whether Applicants have submitted "false evidence" that requires rejection of the application generally, pursuant to § 206.1 of the Zoning Bylaws, and specifically whether it should be rejected if the Declaration as proposed in this appeal differs from that in testimony given at the hearings on this application. Section 206.1 requires an application to be "rejected" if an applicant "grossly misrepresents facts" pertaining to the application or "files a false application or false evidence."

A subdivision or site plan application is expected to evolve through the sketch plan, preliminary plat, and final plat stages. See, generally, <u>In re Appeal of Carroll</u>, 1007 VT 19, 181 Vt. 383 (discussing multi-stage subdivision review). Such changes in the application do not constitute misrepresentation, especially in an application which is being considered <u>de</u> <u>novo</u> by this Court. In such an appeal, it is the evidence that is presented to the Court in the hearing on the merits that constitutes the application. If that evidence differs appreciably from the application that the Planning Commission had before it, it may be appropriate to remand the matter for the Planning Commission to consider the revised application in the first instance, but it is not grounds for rejecting the application under § 206.1.

Accordingly summary judgment is GRANTED to Appellee-Applicant and DENIED to Appellant Lindala on Questions 2 and 14 of the Statement of Questions.

Questions 3 and 11 ask whether this application complies with the provisions of §303.6 applicable to the Rural zoning district. Specifically, Question 3 asks whether the project complies with the requirements of § 303.6.5 with regard to farmland preservation, and Question 11 asks whether the project complies with the objective of the Rural zoning district described in § 303.6.1. Question 6 raises the merits of the subdivision application as to whether the proposal qualifies for waivers of lot size and of the frontage of Lot 3, under § 402.2.

With respect to Planning Commission approval of the proposed subdivision, the provisions of § 303.6 raised in Questions 3 and 11 are only made applicable through § 402.2, which prohibits the Planning Commission from waiving "the provision of any improvements" if such a waiver "would have the effect of nullifying the intent and purpose" of the Zoning Bylaws.

Accordingly, summary judgment is denied to both parties on Questions 6, 3, and 11, which remain for trial on the merits of the subdivision application.

Question 12 of the Statement of Questions

Question 12 asks whether the subdivision complies with the "General Planning Standards" applicable to subdivisions, found in § 500 of the Zoning Bylaws. Broadly, this section requires that the land shall be physically suitable for the proposed purpose, that the development shall show regard for the protection of existing natural resources, that the development shall be compatible with adjacent uses and respect visual and aural privacy, that the development shall not cause unreasonable congestion or unsafe conditions on public or private roads, and that the development shall not place an unreasonable burden on the Town's ability to provide services or facilities. §§ 500.1–500.4.

The affidavit of Applicants' engineer provides facts in support of the subdivision's

compliance with the general planning standards in § 500.

A party opposing a motion for summary judgment may not rest on mere allegations or merely deny the adverse party's statement of material facts; rather, the party opposing summary judgment must lay out specific facts, supported by affidavits or other evidence, showing that there is need for a trial. Field v. Costa, 2008 VT 75, ¶ 14 (citing V.R.C.P. 56). To oppose Applicants' motion for summary judgment on Question 12, Appellant Lindala has merely expressed his concern that the proposed subdivision is inappropriate for this area and is insufficiently protective of adjacent uses, but has not asserted any specific facts to support his allegations that this project fails to meet the general standards contained in § 500, or to show a need for a trial on this issue.

Therefore, because material facts are not in dispute regarding the subdivision's compliance with § 500, summary judgment is GRANTED to Applicants and DENIED to Appellant Lindala on Question 12.

Questions 4 and 13

Questions 4 and 13 relate to whether Applicants' proposal may properly be considered as a Planned Unit Development.

The 2006 Zoning Bylaws allocate to the Planning Commission the tasks of site plan review, review of Planned Unit Developments, and review of subdivisions, § 200.2, and allocate conditional use review to the Zoning Board of Adjustment, § 200.3.1. The term Planned Unit Development is defined in § 849. Oddly, however, the Zoning Bylaws are completely devoid of standards or criteria for the tasks of site plan review, review of Planned Unit Developments, or conditional use review.

With respect to conditional use review, the statutory general standards now contained in 24 V.S.A. § 4414(3)(A) govern conditional use review, whether or not those standards have been written into the particular town's ordinance. In re Application of

11

White, 155 Vt. 612, 618–19 (1991); Richards v. Nowicki, 172 Vt. 142 (2001); In re John A. Russell Corp., 2003 VT 93, ¶¶ 25–28, 175 Vt. 520, 525–26. Thus, even though it would be better practice for the Zoning Bylaws to contain the standards for conditional use review, in the absence of those standards the ZBA could proceed with a conditional use review application by applying the statutory review criteria.

On the other hand, there are no statutory general standards for Planned Unit Development review. Rather, 24 V.S.A. § 4417 is an enabling statute that provides a menu of options allowed to be included (or recommended or required to be included) in the zoning ordinance of any municipality wishing to provide for Planned Unit Development review. At a minimum, the ordinance must include standards for the review of PUDs, as well as other provisions listed in § 4417(c), but the statute does not itself provide those standards.

Since the Bakersfield Zoning Bylaws do not provide any standards for review of Planned Unit Developments, the proposed subdivision cannot be considered by the Planning Commission, and hence by this Court in this appeal, as a Planned Unit Development. See In re Miserocchi, 170 Vt. 320, 325 (overturning ordinance due to lack of standards); Appeal of Bone Mountain, Docket No. 114-6-04 Vtec (Vt. Envtl. Ct. May 11, 2005) (applicable standards must be ascertainable from the zoning ordinance); and see Town of Westford v. Kilburn, 131 Vt. 120, 124–25 (1973) (lack of guiding standards in the ordinance leaves applicant uncertain as to what factors to be considered by municipal panel, and opens the door to exercise of discretion in an arbitrary or discriminatory fashion).

Although in the absence of standards the proposed project cannot be reviewed as a PUD, the subdivision regulations (§§ 401-404 of the Zoning Bylaws) and the general planning standards (§§ 500-501 of the Zoning Bylaws) contain sufficient criteria or standards to review the proposal as a subdivision and to determine whether any waivers

are warranted under § 402.2 of the Zoning Bylaws, and in light of the provisions of § 303.6.5 if farmland is involved.

Accordingly, summary judgment is GRANTED in PART and DENIED in PART to both parties on Questions 4 and 13 of the Statement of Questions, as follows. The subdivision may be considered by the Planning Commission, and hence by this Court in this <u>de novo</u> appeal, for waivers of otherwise-applicable development requirements pursuant to § 402.2 of the Zoning Bylaws; the merits of those waivers remain for decision after trial in the present appeal. The subdivision may not be considered <u>by the Planning Commission</u> (or by this Court in this appeal) as a Planned Unit Development, as no standards have been adopted in the Zoning Bylaws pursuant to 24 V.S.A. § 4417 or its predecessor sections to guide the Planning Commission in carrying out that task. The subdivision may be considered for conditional use approval <u>by the ZBA</u> as a Planned Unit Development, using the statutory standards for conditional use approval; however, any conditional use approval required for the project as a PUD is not before the Court in the present appeal.

Accordingly, based on the forgoing, it is ORDERED and ADJUDGED that Question 1 of the Statement of Questions is dismissed as moot; Questions 8 and 9 are dismissed for lack of subject matter jurisdiction; Appellee-Applicants' Motion for Summary Judgment is GRANTED as to Questions 2, 10, 12, and 14; and summary judgment is GRANTED in PART and DENIED in PART to both parties on Questions 4 and 13 of the Statement of Questions, as discussed above. Both parties' Motions for Summary Judgment are DENIED as to Questions 3, 5, 6, 7 and 11, which remain for the merits of this <u>de novo</u> proceeding.

A telephone conference has been scheduled (see enclosed notice) to discuss the effect of this decision on the settlement entered into by the original Appellants, to discuss

13

whether the parties wish to proceed to the merits of the subdivision application and associated waivers (Questions 3, 5, 6, 7 and 11), and to discuss coordination with any potential ZBA proceedings on conditional use approval. V.R.E.C.P. 2(b). The Town is also welcome to request participation in that conference and/or to move to enter its appearance as an interested party under 24 V.S.A. §4465(b)(2), as its bylaw is at issue in this appeal.

Done at Berlin, Vermont, this 22nd day of August, 2008.

_____
Merideth Wright
Environmental Judge