Bandler v. Charter One Bank, No. 451-7-03 Rdcv (Cohen, J., Aug. 2, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                         **CIVIL DIVISION**
**Rutland Unit**                                           **Docket No. 451-7-03 Rdcv**


**MICHAEL BANDLER, and**
**MICHAEL BANDLER &**
**COMPANY, INC.,**
              **Plaintiffs**


        **v.**


**CHARTER ONE BANK**
**n/k/a CITIZEN'S BANK,**
              **Defendant**


### <u>DECISION ON DEFENDANT'S MOTION TO DISMISS ARBITRATOR'S CLAUSE CONSTRUCTION AWARD, FILED MAY 19, 2010</u>

This case is about allegedly improper bank account fees charged by defendant Citizen's Bank. After plaintiff Michael Bandler brought his claim in this Court, he was ordered him to go to arbitration with the defendant, in accordance with the bank account agreement. At arbitration, the plaintiff sought to certify a class of plaintiffs, and the arbitrator found that the bank account agreement supported class arbitration. The defendant now challenges the arbitrator's clause construction decision.

A hearing on the matter was held on July 1, 2010. Plaintiff Michael Bandler was represented by Robert P. McClallen, Esq. Defendant Charter One Bank n/k/a Citizen's Bank was represented by Tavian M. Mayer, Esq.

### BACKGROUND

In March 2003, Michael Bandler, on behalf of Michael Bandler & Company, Inc., opened a business bank account with Charter One Bank. He also opened a personal account. Mr. Bandler executed an account agreement with Charter One for each account.

The Deposit Account Agreement, for both the personal and business accounts, contains general provisions that include a dispute resolution arbitration clause. It states:

> **Dispute Resolution-Arbitration**. In the unlikely event of a dispute, the Bank wants to resolve the dispute fairly and quickly. In most cases, a problem can be resolved in a branch, by telephone, or by writing to our Consumer Affairs office at [address redacted], Cleveland, OH 44101-3111. You and I agree that should any dispute or controversy arise, you and I will first attempt to resolve the dispute informally and promptly through good faith negotiations. In the event that the dispute is not clearly resolved by informal negotiations, any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. Any statute of limitations which would otherwise be applicable shall apply. Nothing herein shall preclude or limit the Bank's right of set-off. Arbitration shall be final and binding on both parties, and both parties waive their right to seek remedies in court, including the right to a jury trial.
>
> In the event that multiple claims are asserted, some of which are held not subject to these provisions regarding arbitration, you and I agree, to the extent allowed by law, to stay the proceedings of the claims not subject to these provisions until all other claims are resolved in accordance with these provisions. In the event that I, notwithstanding the provisions of this section, file a lawsuit with respect to any claim against you, prior to the appointment of an arbitrator, I agree, to the extent allowed by law, to stay the proceedings until my claim(s) are resolved in accordance with these provisions. In the event the claims are asserted against multiple parties, some of whom are not subject to these provisions regarding arbitration, you and I agree, to the extent allowed by law, to sever the claims subject to these provisions and resolve them in accordance herewith. Nothing shall preclude either you or me from seeking equitable relief in the event an arbitrator is not yet appointed, or if the arbitrator is not legally empowered to grant the relief requested.

2

In July 2003, Michael Bandler and Michael Bandler & Company, Inc. brought an action against Charter One in this Court, arising out of the opening of the bank accounts. Mr. Bandler made various claims against Charter One, including allegations of false representations, misleading advertising, imposition of sorting charges, and improper overdraft fees and sustained overdraft fees leading to charges being incurred.

On November 12, 2003, the Court issued a Final Judgment Order in which it determined that the parties had agreed to arbitrate in the account agreement, the "Account Rules and Regulations." In November 2004, the plaintiffs proceeded to arbitration before the American Arbitration Association (AAA).

The plaintiffs then sought to amend their arbitration demand in order to bring the arbitration both individually and on behalf of two classes: (1) "Persons who have opened accounts with Charter One in Vermont, since Charter One began advertising 'Free Checking' and have incurred charges."; and (2) "Persons who have opened accounts with Charter One in Vermont, executing agreements which provide for: modification at will by Charter One; no requirement of direct notice of changes; and, have been subjected to changes which resulted in charges such as sorting and continuing overdraft charges."

On September 3, 2006, the arbitrator issued an order entitled "Class Action, Clause Construction Partial, Final Arbitration Award." In this order, the arbitrator determined that the arbitration was governed by AAA's Supplementary Rules for Class Arbitrations, that the arbitrator had the authority to address the issue of class arbitration, and that class action arbitration was permitted under the bank account agreement. In coming to the conclusion that the account agreement supported class action arbitration, the arbitrator relied extensively on the case of *Green Tree Financial Corp. v. Bazzle*, 539

3

U.S. 444 (2003).

Following the arbitrator's class action arbitration order, the Supreme Court of the United States granted certiorari to another class action arbitration case, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85 (2d Cir. 2008), *cert. granted*, 129 S.Ct. 2793 (June 15, 2009). The arbitrator then stayed the arbitration proceeding, recognizing that "in the interest of cost efficiency . . . the outcome of Stolt-Nielsen could well have a significant impact on the future conduct of this arbitration." Decision on Motion to Stay, August 17, 2009.

On April 27, 2010, the Supreme Court issued its opinion in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758 (2010). On May 19, Charter One filed the instant motion to dismiss the arbitrator's clause construction award. Charter One argues that (1) only the Court, not the arbitrator, has the authority to decide whether class arbitration is appropriate, and (2) that under the account agreement there is no contractual basis for class arbitration. The Court need not address the first argument, as the second is dispositive of the motion.

## DISCUSSION

The arbitrator proceeded with the clause construction award analysis under Section 3 of the AAA's Supplementary Rules for Class Arbitrations. That section provides in pertinent part that:

> [T]he arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent

4

> jurisdiction to confirm or to vacate the Clause Construction Award . . . If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

The arbitrator stayed the proceedings pending the resolution of *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, and after resolution of *Stolt-Nielsen* the defendant sought review of the clause construction award order in this Court. The defendant seeks review in the same manner as the petitioner did in *Stolt- Nielsen*, following the arbitrator's issuance of the clause construction award in accordance with Rule 3 of the Supplemental Rules Class Arbitrations. *Stolt-Nielsen*, 130 S.Ct. at 1765-66. Thus, the issue of whether the parties agreed to class arbitration is ripe for review.[1]

Here, the defendant contends that the decision of the arbitrator must be vacated, but in order to obtain that relief, it "must clear a high hurdle." *Stolt-Nielsen*, 130 S.Ct. at 1768. It is not enough for the defendant "to show that the panel committed an error-or even a serious error." *Id*. It is only when arbitrators stray from interpretation and application of the agreement and effectively dispense their own brand of industrial justice that their decisions may be unenforceable. *Id*. In that situation, an arbitration decision may be vacated on the ground that the arbitrator exceeded his or her powers, for the task of an arbitrator is to interpret and enforce a contract, not to make public policy. See *Id*. (citing Federal Arbitration Act, 9 U.S.C. § 10(a)(4)); see also 12 V.S.A. § 5677(a)(3) (under Vermont Arbitration Act, a court shall vacate an award where the arbitrators

---

[1] The Vermont Arbitration Act, 12 V.S.A. § 5677(c), requires that an application to vacate an award be made within 30 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it may be made within 30 days after such grounds are known or should have been known. The parties have not raised this issue, either in the pleadings or at the hearing on July 1, 2010. Thus, the Court considers any argument as to this issue waived.

exceeded their powers). In this case, as in *Stolt-Nielsen*, the Court must conclude that what the arbitrator did was simply to impose his own view of sound policy regarding class arbitration. See *Stolt-Nielsen*, 130 S.Ct. at 1767-68.

In *Stolt-Nielsen*, the Court found that "instead of identifying and applying a rule of decision derived from the FAA or either maritime or New York law, the arbitration panel imposed its own policy choice and thus exceeded its powers." 130 S.Ct. at 1770. Here, similarly, the arbitrator did not identify and apply a rule of decision derived from the Vermont Arbitration Act or other Vermont law. Furthermore, rather than analyzing whether the parties actually agreed to class arbitration, the arbitrator put the onus on Charter One to prove that class arbitration was precluded.

The arbitrator dismissed Charter One's argument that because the deposit account agreement repeatedly referred to the depositor in the singular and the arbitration clause referred specifically to "both parties," class arbitration was not contemplated by the parties. The arbitrator found that the contract language did not expressly forbid, and, was in fact wholly consistent with class arbitration. Furthermore, the arbitrator found that even if the contract language was not wholly consistent with class arbitration, the contract was ambiguous and the arbitrator would construe any ambiguity in a manner permitting class arbitration.

This Court cannot read the arbitrator's decision as anything other than a non-legally supported policy choice. The arbitrator first relied on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), for the proposition that that the "meaning of the language [of the contract] should be referred to an arbitrator who would have discretion to interpret it as either permitting or forbidding class arbitrations." See Arbitrator's Decision, p. 5.

6

However, the arbitrator did not analyze the contract language beyond concluding that the arbitration clause in *Green Tree* was more contrary to class arbitration than the arbitration clause in the present case. Arbitrator's Decision, p.5 n.4. The arbitrator concluded that references to the depositor and the bank in the singular could be read as consistent with class arbitration because "a class action is a quasi-procedural mechanism for amalgamating a series of individual claims, each of which remains an individual claim even after it is brought under the umbrella of a class action." *Id*. The arbitrator cited no law for this conclusion, and the Court can only read it as a policy choice by the arbitrator to allow class arbitration unless class arbitration is expressly precluded in a contract.

The Court must also read the arbitrator's conclusion that the contract was ambiguous, and that the arbitrator would construe any ambiguity in a manner permitting class arbitration, as nothing more than a policy choice. The arbitrator supported its conclusion that class arbitration was appropriate by citing federal law which found that federal policy favored arbitration and that ambiguities as to the scope of arbitration would be resolved in favor of arbitration. See *Id*. (citing *Volt Information Systems, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989)). However, the issue here is not whether arbitration in general was supported under the contract, but whether class arbitration was supported.

Furthermore, the arbitrator cited black letter law for the proposition that ambiguities in a contract are construed against the drafter, in this case Charter One. Arbitrator's Decision, p. 5-6. However, he never conducted any analysis as to whether the contract was actually ambiguous. Apparently the arbitrator concluded that mere silence in the account agreement as to class arbitration equaled ambiguity in the contract.

7

The arbitrator's final rational supporting his decision further reveals its true nature as a policy choice. The arbitrator wrote, "it is significant that when depositors signed the Deposit Account Agreements containing the Arbitration Clauses, they could not possibly have understood that the vague language of those Clauses constituted a waiver of any right to participate in a class action." Arbitrator's Decision, p. 6. Beyond the fact that the arbitrator never analyzed any of the so-called "vague" clauses in the agreement, it was also error to make the assumption that agreements support class arbitration unless otherwise waived. The arbitrator cited no law for the proposition that a right to class arbitration exists unless otherwise waived. Again, this was a policy choice.

Here, the arbitrator strayed from interpretation and application of the agreement and effectively dispensed his own brand of industrial justice. *Stolt-Nielsen*, 130 S.Ct. at 1768. The arbitration decision is therefore vacated on the ground that the arbitrator exceeded his powers, "for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id.* (citing 9 U.S.C. § 10(a)(4)); see also 12 V.S.A. § 5677(a)(3) (a court shall vacate an award where the arbitrators exceeded their powers). As a result, the Court must either direct a rehearing by the arbitrator or decide the question that was originally referred to the arbitrator. *Stolt-Nielsen*, 130 S.Ct. at 1770 (citing 9 U.S.C. § 10(b)); see also 12 V.S.A. § 5677(d) (if court vacates the award because the arbitrators exceeded their powers, the court may order a rehearing before the arbitrators who made the award or their successors). Because the Court concludes that there can be only one possible outcome on the facts before it, the Court sees no need to direct a rehearing by the arbitrator. See *Stolt-Nielsen*, 130 S.Ct. at 1770.

The interpretation of an arbitration agreement is generally a matter of state law.

*Stolt-Nielsen*, 130 S.Ct. at 1773. The Vermont Supreme Court has stated that "[i]n deciding whether parties agreed to arbitrate a matter, we apply the ordinary rules of contract interpretation." *State v. Phillip Morris USA, Inc.*, 2008 VT 11, ¶ 13, 183 Vt. 176. The Court interprets contracts to give effect to the parties' intent, which it presumes is reflected in the contract's language when that language is clear. *R&G Properties, Inc. V. Column Financial, Inc.*, 2008 VT 113, ¶ 17, 184 Vt. 494. The Court also strives to "give effect to every part of the instrument and form a harmonious whole from the parts." *Id*.

Where the terms of an agreement are plain and unambiguous, they will be given effect and enforced in accordance with their language. *O'Connell-Starkey v. Starkey*, 2007 VT 128, ¶ 8, 183 Vt. 10. An ambiguity in a contract exists when a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable. *Dep't of Corr. v. Matrix Health Systems, P.C.*, 2008 VT 32, ¶ 12, 183 Vt. 348.

Here, only one interpretation is reasonable and ambiguity does not exist. Under the general provisions of the deposit account agreement, the terms "I," "me," "my" and "our" refer to the depositor (whether joint or individual), and the terms "you," and "your" refer to the Bank. The agreement goes on to repeatedly refer to the depositor in the singular. There is never any referral to plural parties or to class arbitration.

The Court will not read a term into an agreement unless it arises by necessary implication. *Field v. Costa*, 2008 VT 75, ¶ 17, 184 Vt. 230. And, the Court does "not insert terms into an agreement by implication unless the implication arises from the language employed or *is indispensable to effectuate the intention of the parties*." *Id*. (emphasis in original). Here, class arbitration is not "*indispensable to effectuate the*

9

*intention of the parties*." To the contrary, class arbitration is at odds with the intention of the parties under the agreement. The dispute resolution-arbitration section of the agreement states: "You and I agree that should any dispute or controversy arise, you and I will first attempt to resolve the dispute informally and promptly through good faith negotiations." Class arbitration would not effectuate the intention of the parties because they intended that the first step in any dispute would be to attempt to resolve the dispute informally through good faith negotiations. A class certification would essentially skip this first step in the dispute resolution process that the parties agreed to. Thus, not only is there no agreement between the parties as to class arbitration, but class arbitration is actually contradictory to the intentions of the parties under the deposit account agreement.

The Supreme Court's analysis in *Stolt-Nielsen* is equally instructive. The Federal Arbitration Act imposes certain rules of fundamental importance, "including the basic precept that arbitration is a matter of consent, not coercion." *Stolt-Nielsen*, 130 S.Ct. at 1773 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) (internal quotations omitted). The Court has said on numerous occasions that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to the their terms." *Stolt Nielsen*, 130 S.Ct. at 1773 (citations omitted). When construing an arbitration agreement or an arbitration clause, "courts and arbitrators must give effect to the contractual rights and expectations of the parties[,]" and the "parties intentions control." *Id*. at 1773-74 (internal quotations omitted).

After analyzing various principles regarding the FAA, the Supreme Court

concluded that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 130 S.Ct. at 1775 (emphasis in original). Here, as in *Stolt-Nielsen*, the arbitrator viewed the arbitration agreement from the standpoint of whether the parties intended to *preclude* class arbitration, rather than whether they *agreed* to class arbitration. See *Id*. (critical point, in the view of the arbitration panel, was that petitioners did not establish that the parties to the agreements intended to *preclude* arbitration). This is evident from the arbitrator's conclusion that when the depositors signed the deposit account agreement, "they could not possibly have understood that the vague language of those Clauses constituted a waiver of any right participate in a class action." Arbitrator's Decision at p. 6. This Court, like the *Stolt-Nielsen* Court, finds the arbitrator's conclusion to be "fundamentally at war" with the principle that arbitration is a matter of consent. See 130 S.Ct. at 1775.

While "procedural" questions which grow out of the dispute and bear on its final disposition are presumptively for an arbitrator to decide, "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id*. The differences between bilateral and class-action arbitration "are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id*. at 1776.

The question is whether "the parties *agreed to authorize* class arbitration." *Id*.

(emphasis in original). As this Court concluded above, the parties did not agree to class arbitration under the deposit account agreement. And, reading class arbitration into the agreement would actually defeat the intention of the parties. Thus, the arbitration shall proceed as a bilateral arbitration.

## ORDER

(1) Defendant Charter One's Motion to Dismiss Arbitrator's Clause Construction Award, filed May 19, 2010, is GRANTED.

(2) The arbitrator's Class Action, Clause Construction Partial, Final Arbitration Award is VACATED.

(3) The arbitration shall proceed as a bilateral arbitration.

Dated at Rutland, Vermont this _____ day of _____, 2010.

_____
Hon. William Cohen
Superior Court Judge